UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

M/A-COM, INC.,

        Plaintiff,

  -against-

LYNMARK CONSTRUCTION AND MANAGEMENT
CO., INC.,

        Defendant.

------------------------------------x



05 Civ. 9275

OPINION

A P P E A R A N C E S:

  Attorneys for Plaintiff

  MARK S. KUNDLA, ESQ.
  110 William Street, 25th Floor
  New York, NY 10038

  Attorneys for Defendant

  MICHAEL J. LENDINO, P.C.
  P.O. Box 142
  Harrison, New York 10528

**Sweet, D.J.**

Plaintiff M/A-Com, Inc. ("M/A-Com" or the "Plaintiff") has moved under Rule 56, Fed. R. Civ. P., for summary judgment on its complaint alleging that defendant Lynmark Construction and Management Co., Inc. ("Lynmark" or the "Defendant") has improperly withheld payment of $144,000 due under the contract between the parties. Lynmark has cross-moved for summary judgment dismissing the M/A complaint or, alternatively, for additional discovery. Upon the facts and circumstances set forth below, the motion of M/A-Com is granted, and the cross-motion of Lynmark is denied.

**Prior Proceedings**

The action was commenced on November 1, 2005, by the M/A-Com complaint, filed under the Court's diversity jurisdiction, alleging that Lynmark withheld $144,000 due to M/A-Com on its subcontract with Lynmark.

Some discovery was undertaken but was discontinued upon the filing of the instant motion by M/A-

Com. The M/A-Com motion and the Lynmark cross-motion were heard and marked fully submitted on December 5, 2007.

**The Facts**

The facts have been set forth in the M/A-Com Local Civil Rule 56.1 Statement of Material Facts, dated August 14, 2007; the Lynmark Response to Plaintiff's Rule 56.1 Statement of Facts dated April 26, 2007; the Lynmark Combined Response to Plaintiff's Rule 56.1 Statement of Facts/Defendant's Statement of Material Facts pursuant to Local Rule 56.1, dated October 8, 2007; and M/A-Com's Reply Rule 56.1 Statement of Facts, dated November 12, 2007. The facts which follow emerge from these statements, as well as affidavits and exhibits submitted. Both sides contend that there are no material facts in dispute, but contest the agreement between them.

In December of 2002, the Port Authority of New York and New Jersey (the "Port Authority") issued a set of specifications pertaining to the construction of a Central Police Desk ("CPD")/Emergency Operations Center ("EOC") (the "Specifications"). The Specifications with respect to RF and non-RF Electronic Systems, in "Section 201--Damage

and Performance Requirements," stated that the construction of the Central Police Desk/Emergency Operations Center was to be undertaken by M/A-Com, that all products and services specified were to be provided by M/A-Com, and that, "[t]o facilitate a seamless integration of multiple vendor equipment, the recommended installation and integration contractor for all RF systems is Eastern Communications." Specifications at 2. Following the issuance of the Specifications, on or about January 22, 2003, M/A-Com extended a proposal to the Port Authority (the "Proposal"), valid until April 22, 2003. The Proposal stated as follows:

> Implementation and Support
>
> M/A-COM proposes to install and implement the upgrade of NY/NJ Port Authority radio system utilizing the services of M/A-COM's Northeast Service Center. Dennis Ward is the Regional Service Manager and will provide a team of technicians to ensure the successful installation and implementation of the project. Where appropriate, Eastern Communications, an Authorized Service Center (ASC), will be utilized. The M/A-COM Northeast Service Center's pertinent information is listed below . . . .
>
> Project Management & System Engineer
>
> M/A-COM will assign a Project Manager to ensure the project implementation is performed on time, as defined in the proposal and contract.

3

> M/A-COM will assign a System Engineer that will
> have full technical responsibility for the radio
> system design. He will be responsible for
> configuring M/A-COM's standard products and
> **various vendor products into a complete
> operational system.**

Proposal at 7.

Lynmark was the prime contractor for the Port Authority project and John Jovan ("Jovan") was the Project Manager.

On August 12, 2003, a project meeting was held and attended by Jovan and other representatives concerning "open issues regarding the Audio/Visual Communication aspects of the Project." Minutes of August 12, 2003 meeting, Def.'s Resp. to Pl.'s 56.1, Ex. C. The Minutes stated further:

> Motorola stated that their agreement/price
> proposal to the Contractor was for delivery of
> the Equipment only. All installation is to be
> done by others. Eastern Communications was
> present representing the MA/COM Group. Motorola
> requested that Eastern perform the installation
> of Motorola's cable, equipment and antennas.
> **Eastern Communications will submit to Lynmark a**
> cost to perform this work. Eastern stated that
> they will receive the Motorola Equipment, unpack
> it and test it prior to installing it at the
> project site. Eastern will provide all MA/COM
> Documentation and Training for all the MA/COM

4

equipment while Motorola is to supply
Documentation and Training for all the Motorola
Equipment. Both parties agreed to this.

Neither party has challenged the characterization of Eastern Communications ("Eastern") as representing M/A-Com. Jovan has stated that it was at this meeting that he became aware that M/A-Com did not intend to integrate its equipment with the equipment of other vendors. See Jovan Decl. ¶ 8.

On September 3, 2003, Eastern forwarded to Lynmark its proposal to perform the integration function. On September 5, 2003, Jovan forwarded contracts to M/A-Com and requested signatures, after which Lynmark would return an executed copy to M/A-Com for its files. No evidence has been submitted that these contracts were ever signed by M/A-Com.

On October 22, the Contracts Manager of M/A-Com forwarded to Jovan a letter stating:

> Dear Mr. Jovan:
>
> Subject: PORT AUTHORITY—CENTRAL POLICE DESK
> Dispatch/Communications Equipment

The above referenced order was priced in accordance with the New Jersey State Contract and therefore the Terms and Conditions of that contract will be applicable to this order. Please sign a copy of this letter as your acceptance of the New Jersey State Contract Terms and Conditions and fax it back to me . . . so that we may continue processing this order.

Very truly yours,

Cristal A. Huyghe
Contracts Manager


The letter was signed and acknowledged by Jovan on October 28, 2003.

According to the affidavit of Kenneth Palazzi ("Palazzi"), manager of Open Sky and Network First Programs of M/A-Com, the M/A-Com letter of October 22, 2003, acknowledged on October 28, together with Exhibit C to his affidavit, constituted the agreement between the parties. Exhibit C reads as follows:

EXHIBIT "A" PAGE                    SEPTEMBER 5, 2003

LYNMARK CONSTRUCTION & MANAGEMENT CO., INC. &
M-A/COM, INC.

RE: PORT AUTHORITY NY/NJ - CENTRAL POLICE DESK

Subcontractor shall provide the following:

M/A COM, Inc. will supply labor, equipment, testing and training for work specified on

>       Drawing ES-1 thru ES-33 dated December 20, 2002
>       by San Fanandre Justin and specification Section
>       16780.  The work is to include but not be limited
>       to:
>
>       - C3 Maestro consoles
>       - Orion desktop control stations with an EDACS
>         digital desktop controller
>       - Desktop digital recall recorders
>       - Hardware and software to upgrade the CEC
>         M/A-COM proposal (attached) represents scope
>         of work to be competed
>
>   All debris created by this subcontractor is to be
>   deposited into dumpster on a daily basis.
>
>       Total cost of project..........$667,225.00
>
>   A Certificate of Insurance must be submitted
>   before the start-up of job.

Although not so identified in the submissions, it is inferred that this September 5, 2003, document was part of the initial submission by Lynmark to M/A-Com, was enclosed as part of the October 22 letter of M/A-Com, acknowledged by Jovan on October 28, and is the subcontract between Lynmark and M/A-Com in the amount of $667,225.

On November 5, 2003, Lynmark accepted Eastern's proposal to perform the integration function for $144,000, the amount in controversy.

On October 21, 2004, Jovan sent Palazzi the following e-mail:

From: John Jovan [ ]
Sent: Thursday, October 21, 2004 10:59 AM
To: Palazzi, Ken
Subject: Port Authority Police Desk

Ken,
I am sorry about the delay I am in the field, trying to pass a C.O. inspection. But in short there is a discrepancy with the Port Authority and your proposal. They state that the integration of all the equipment which Eastern completed should be part of your scope of work. I will send you all of the correspondence between Lynmark and the PA and maybe you will shed some light on this. So that is why they are holding back on our money and I in turn and holding back on paying you. I will be back in the office on Monday to work all this up.
John

**The Summary Judgment Standard**

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett,

material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending

against the motion." Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir. 1985). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. If there is not, summary judgment is proper. See id. at 249-50.

Both parties having moved for summary judgment, the inference to be drawn from the statements, affidavits, and exhibits can be drawn equally as to both parties.

**The M/A-Com Motion is Granted**

As found above, M/A-Com and Lynmark entered into a subcontract on October 28, 2003 (the "Subcontract"). The Subcontract did not state that M/A-Com would perform integration tasks within the scope of M/A-Com's work, and the parties had apparently agreed on August 12, 2003, that the work would be performed by Eastern as indicated in the Specifications. Lynmark, in fact, retained Eastern Communications on November 5, 2003, to perform that function at a price of $144,000. The Proposal and the Specifications were not incorporated in the Subcontract.

Lynmark has sought to expand the terms of the Subcontract by reference to extrinsic evidence which is precluded by the parol evidence rule and, therefore, should be rejected. Wayland Investment Fund, LLC v. Lillenium Seacarriers, Inc., 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000). "Under New York law a Contract which appears complete on its fact is an integrated agreement as a matter of law." Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735, 738 n.3 (2d Cir. 1975) (citing Higgs v. De Marizoff, 263 N.Y. 473, 478 (1934)); see also W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162, (1990). That is, if the written agreement appears to define the extent of the parties' obligations, it is presumed to contain the parties' entire agreement. Wayland Investment Fund, LLC, 111 F. Supp. 2d at 454 (citations omitted).

The Subcontract required that M/A-Com provide the listed goods and services at a specified price of $677,225. Whether a written contract is ambiguous is a question of law to be decided by the court. W.W.W. Assocs., Inc., 77 N.Y.2d at 162 (citation omitted).

Here, Lynmark has not identified a provision in the Subcontract that it claims is ambiguous but has referred to the Specifications and to the Proposal. Such "[e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." Intercontinental Planning v. Daystrom, Inc., 24 N.Y.2d 372, 379 (1969) (citations omitted).

Even if the Specifications and the expired Proposal are considered, neither document required M/A-Com to perform the integration work, and neither bound M/A-Com.

Lynmark, as the general contractor, was the party ultimately responsible for providing the Port Authority with the "turnkey" system, and it fulfilled its obligation to provide the Port Authority with a "turnkey" system by hiring two subcontractors, each responsible for distinct aspects of the Project. Further, it is undisputed that M/A-Com performed all of the work required of it under the terms of the Subcontract.

**Conclusion**

The M/A-Com motion for summary judgment is granted. Lynmark's cross-motion for summary judgment is denied.

Submit judgment on notice.

It is so ordered.

**New York, N.Y.**
**March 18, 2008**

ROBERT W. SWEET
U.S.D.J.